IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

BRENDA GLOVER, on behalf
of herself and all others similarly
situated,                                                                    **PLAINTIFF**

v.                                    CASE NO. *4:14cv644-JLH*

HOUSING AUTHORITY OF THE
CITY OF LITTLE ROCK, d/b/a
METROPOLITAN HOUSING
ALLIANCE, and RODNEY FORTE,
Executive Director of Metropolitan
Housing Alliance, in his Official Capacity,

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

NOV 03 2014

JAMES W. McCORMACK, CLERK
By:_____ CLERK

**DEFENDANTS**

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLANTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

Table of Contents.................................................................................................................i

Table of Authorities ........................................................................................................ iii

Introduction.......................................................................................................................1

Background ........................................................................................................................1

Argument ...........................................................................................................................5

I.   PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS..................................6

    A. *Plaintiff's claims are enforceable through 42 U.S.C. § 1983* ............................7

    B. *Plaintiff's claims are substantively meritorious* ................................................9

       i.  Termination of Benefits Solely Based on Notice to Vacate ........................10

          1.  Procedural due process (Count I) ........................................................11

          2.  Substantive due process (Count II)......................................................12

          3.  42 U.S.C. § 1437f(o)(7) and 24 C.F.R. § 982.311 (Count III) ..............13

       ii.  Informal Hearing ........................................................................................14

          1.  Failure to provide sufficient termination notice (Count IV)..................15

          2.  Failure to permit evidence and cross-examination of witnesses (Count V) ..........16

          3.  Failure to base decision upon evidence at hearing (Count VI)..............17

          4.  Failure to provide impartial hearing officer (Count VII).......................18

          5.  Inadequate written final decision (Count VIII) .....................................19

II.  PLAINTIFF WILL SUFFER IRREPARABLE HARM
     WITHOUT PRELIMINARY RELIEF.................................................................20

III. THE BALANCE OF HARDSHIP TILTS STRONGLY
     IN FAVOR OF PLAINTIFF ...............................................................................21

IV. THE PUBLIC INTEREST WOULD BE BEST SERVED BY
     GRANTING INJUNCTIVE RELIEF...................................................................21

Conclusion ............................................................................................................22

## TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*Baird v. Bd. of Educ.*,
   389 F.3d 685 (7th Cir. 2004) ......................................................................................11

*Basco v. Machin*,
   514 F.3d 1177 (11th Cir. 2008) ..................................................................................18

*Boykins v. Cmty. Dev. Corp.*,
   No. 10-cv-3788, 2011 U.S. Dist. LEXIS 28650 (E.D.N.Y. Mar. 21, 2011)..............19

*Brantley v. W. Valley City Hous. Auth.*,
   No. 2:08CV573DAK, 2009 U.S. Dist. LEXIS 10824 (D. Utah Feb. 4, 2009).........19

*Clark v. Alexander*,
   85 F.3d 146 (4th Cir. 1996) ..............................................................................11, 14

*Cnty. of Sacramento v. Lewis*,
   523 U.S. 833 (1998)...................................................................................................12

*Dataphase Systems, Inc. v. C.L. Systems, Inc.*,
   640 F.2d 109 (8th Cir. 1981) ......................................................................................5

*Davis v. City of New York*,
   902 F. Supp. 2d 405 (S.D.N.Y. 2012).........................................................................9

*Edgecomb v. Hous. Auth.*,
   824 F. Supp. 312 (D. Conn. 1993)...............................................................16, 17, 18

*Escalera v. New York City Hous. Auth.*,
   425 F.2d 853 (2d Cir. 1970)......................................................................................17

*Fields v. Omaha Hous. Auth.*,
   No. 8:04CV554, 2006 U.S. Dist. LEXIS 10043 (D. Neb. Jan. 23, 2006) ..................9

*Gammons v. Mass. Dep't of Hous. & Cmty. Dev.*,
   523 F. Supp. 2d 76 (D. Mass. 2007) ...........................................................................9

*Goldberg v. Kelly*,
   397 U.S. 254 (1970).................................................................................................14

*Hunter v. Underwood*,
   362 F.3d 468 (8th Cir. 2004)\ .....................................................................................7

*Int'l Ass'n of Machinists & Aerospace Workers v. Schimmel,*
    128 F.3d 689 (8th Cir. 1997) ....................................................................5

*Jeffries v. Ga. Residential Fin. Auth.,*
    678 F.2d 919 (11th Cir. 1982) ................................................................11

*Johnson v. U.S. Dep't of Agric.,*
    734 F.2d 774 (11th Cir. 1984) ................................................................20

*Jones v. Lansing Hous. Comm'n,*
    No. 5:03-cv-123, 2003 U.S. Dist. LEXIS 28327 (W.D. Mich. Sept. 19, 2003) ........15

*Kan. City S. Transp. Co. v. Teamsters Local Union No. 41,*
    126 F.3d 1059 (8th Cir. 1997) ..................................................................5

*Lopez v. Heckler,*
    713 F.2d 1432 (9th Cir. 1983) ................................................................21

*Loving v. Brainerd Hous. & Redevelopment Auth.,*
    No. 08-1349, 2009 U.S. Dist. LEXIS 8664 (D. Minn. Feb. 5, 2009) ...............14, 15

*Maine v. Thiboutot,*
    448 U.S. 1, 7–8 (1980)............................................................................7

*Mathews v. Eldridge,*
    424 U.S. 319 (1976)..............................................................................11

*Palmer v. Upland Hous. Auth.,*
    No. 12-2074, 2013 U.S. Dist. LEXIS 27211 (C.D. Cal. Feb. 21, 2013) ...............20

*PCTV Gold, Inc. v. SpeedNet, LLC,*
    508 F.3d 1137 (8th Cir. 2007) ..................................................................5

*Pediatric Specialty Care, Inc. v. Ark. Dep't of Human Servs.,*
    293 F.3d 472 (8th Cir. 2002) ..............................................................7, 8, 9

*Piretti v. Hyman,*
    No. 79-622-K, 1979 U.S. Dist. LEXIS 15386 (D. Mass. July 23, 1979) ...............19

*Planned Parenthood v. Rounds,*
    530 F.3d 724 (8th Cir. 2008) ..................................................................6

*Pratt v. Hous. Auth.,*
    No. 05-0544, 2006 U.S. Dist. LEXIS 70575 (D.N.J. Sept. 27, 2006)......................16

*Rogers Grp., Inc. v. City of Fayetteville,*
    629 F.3d 784 (8th Cir. 2010) ............................................................20

*Sitzes v. City of W. Memphis,*
    606 F.3d 461 (8th Cir. 2010) ...........................................................7, 8

*Slaven v. Engstrom,*
    710 F.3d 772 (8th Cir. 2013) ...............................................................9

*Stevenson v. Willis,*
    579 F. Supp. 2d 913 (N.D. Ohio 2008)...........................................9, 18

*Thomas v. Housing Authority of the City of Little Rock,*
    282 F. Supp. 575 (E.D. Ark. 1967) ...............................................12, 13

*TXO Prod. Corp. v. Alliance Res. Corp.,*
    509 U.S. 443 (1993)...........................................................................12

*Wilson v. Lincoln Redevelopment Corp.,*
    488 F.2d 339 (8th Cir. 1973) ..............................................................18

*Woods v. Willis,*
    515 F. App'x 471 (6th Cir. 2013) .......................................................17

*Wright v. City of Roanoke Redevelopment & Housing Authority,*
    479 U.S. 418 (1987)..........................................................................7, 8

*Young v. Maryville Hous. Auth.,*
    No. 3:09-cv-372009 U.S. Dist. LEXIS 56539 (E.D. Tenn. July 2, 2009) .................................16

## STATUTES & RULES

Ark. Code. Ann. § 18-16-101 ...............................................................3, 13

24 C.F.R. § 982.311...........................................................................8, 13, 14

24 C.F.R. § 982.551...............................................................................4, 19

24 C.F.R. § 982.555............................................................8, 9, 15, 16, 17, 19

42 U.S.C. § 1437...........................................................................7, 8, 9, 13

42 U.S.C. § 1983...............................................................................6, 7, 8, 9

## INTRODUCTION

Plaintiff receives housing assistance through a housing choice voucher program ("Section 8") administered by the Housing Authority of the City of Little Rock, d/b/a/ Metropolitan Housing Alliance ("MHA" or "Defendant"). In August 2014, Plaintiff's lease was set to end. She arranged with her landlord to deduct her final rent payment from her security deposit. The landlord subsequently refused to return the balance of the security deposit, however, and Plaintiff filed a complaint with the Arkansas Attorney General. When the landlord learned about the complaint, he reneged on the rent agreement, served Plaintiff with a notice to vacate, and provided the notice to Defendant. Defendant immediately notified Plaintiff that her Section 8 assistance was being terminated, despite the fact that there had not been (and would never be) a judicial order for eviction. Though Plaintiff attended a hearing about the termination, Defendant refused to consider evidence that Plaintiff had not missed her rent payment and that the notice to vacate was a retaliatory act by her landlord. The notice to vacate was the sole and dispositive factor for termination.

As alleged in the complaint, Defendant's actions violated Plaintiff's due process rights and federal law—claims upon which Plaintiff is likely to succeed on the merits. Moreover, without preliminary relief, Plaintiff faces the irreparable harm of homelessness. The harm to Plaintiff far outweighs any harm that Defendant will suffer in restoring Plaintiff's Section 8 assistance, and a preliminary injunction is in the public interest. Therefore, Plaintiff respectfully requests a preliminary injunction ordering Defendant to restore her Section 8 housing benefits.

## BACKGROUND

Plaintiff is disabled. She has a monthly income of $746 and requires the Section 8 program for shelter. Her family consists of herself, her daughters, and her grandchildren.

In contrast to traditional public housing, where lessees are housed in buildings operated by the government, the Section 8 program permits beneficiaries to rent from private landlords. The landlords contract with the housing authority to provide lodging and receive Section 8 subsidies. The beneficiary signs a lease with the landlord and agrees to cover any rent amount that the Section 8 subsidies do not. Until the events described below, Plaintiff's rent obligation was $1 per month, with her Section 8 voucher covering the remainder. Plaintiff first began receiving Section 8 benefits from Defendant in 2006, and since that time she has been a model tenant. She has never engendered a complaint or missed a rent payment.

The Section 8 program is closely regulated to ensure that each beneficiary's level of public assistance is appropriate. When a beneficiary gains additional income or has a change in family situation, her rent obligation is subject to change accordingly. Moreover, beneficiaries cannot change housing without the consent of the housing authority and landlord. These factors all came into play for Plaintiff in May of this year. Until that time, Plaintiff had lived with two of her daughters and three of her grandchildren in the same house. One of Plaintiff's daughters and two of her grandchildren moved out of her home; that meant that Plaintiff's three-bedroom apartment was considered too large for her family and that her rent obligation would go up. Plaintiff received notice that her rent obligation would increase from $1 to $303 effective July 1, 2014. Plaintiff requested a transfer to a smaller apartment so as to maintain her lower rent obligation. Defendant was unable to process the transfer until early August, which meant that Plaintiff would remain liable for the increased rent obligation in the months of July and August.

Plaintiff paid her July rent by borrowing funds from her church and selling her laptop. However, she could not make the August rent in the same fashion. Without paying the final month's rent, her voucher transfer could not be processed. So she asked her landlord for a grace

period in which to pay. On August 4, 2014, her landlord agreed to deduct the August rent from

Plaintiff's $850 security deposit, memorialized this agreement in writing, and faxed the written

agreement to Defendant. *See* Compl. exh. 1. Had this state of affairs remained, Plaintiff would

have been permitted to transfer her voucher and her rent obligation would have returned to $1.

However, there was still a question about the remainder of the security deposit. Plaintiff

asked whether she would receive the portion of the security deposit that was not being deducted

for rent. The landlord contended that Plaintiff should not receive any of the security deposit

back. When Plaintiff and the landlord could not reach an agreement, Plaintiff filed a complaint

with the Arkansas Attorney General's office for withholding the remainder of the security

deposit. Pursuant to policy, the Attorney General's office informed the landlord that Plaintiff had

filed a complaint against him. The landlord went berserk. Not only did he renege on the written

agreement, and thus fail to apply the security deposit to rent as promised; on August 11, 2014, he

served Plaintiff with (and provided to Defendant) a notice to vacate under Arkansas's criminal

failure-to-vacate statute. *See* Compl. exh. 2. Under this statute, Ark. Code. Ann. § 18-16-101(a),

a tenant's failure to pay rent even one day late terminates the lease. Upon the landlord's service

of a notice to vacate, the tenant has ten days to abandon the premises or else face misdemeanor

charges.

The landlord's action was hardly necessary given that Plaintiff was planning to move out

within weeks. Nor was it proper, as Plaintiff and the landlord had already come to an agreement

for payment of August rent. Indeed, Plaintiff was never convicted of any charges that the

landlord initiated. But the landlord's action did achieve the desired effect of getting Plaintiff into

trouble with Defendant. On August 12, 2014—a single day after the landlord provided the notice

to vacate—Defendant sent Plaintiff a letter stating that her Section 8 voucher would be

3

terminated effective August 27, 2014. *See* Compl. exh. 3. The ground given for termination was terse: "Ten day Eviction Notice to vacate for back rent owed in the amount of $303 for August."

The letter also informed Plaintiff that she could avail herself of an "informal hearing"—essentially an administrative appeal of Defendant's termination decision. Plaintiff submitted a request for a hearing on August 14, 2014. Despite the promise in the termination letter that the informal hearing would occur "14 calendar days" from receipt of an appeal request, Defendant did not hold the hearing until September 4, 2014. And as reflected in the certified transcript, *see* Compl. exh. 4, the hearing was an exercise in futility. Defendant's hearing officer, Asonja Nuckolls, could not cite any regulation that justified termination of Plaintiff's benefits, yet she—assisted by Marshall Nash, another MHA employee—repeatedly asserted that Defendant's policy is to terminate benefits upon receipt of a notice to vacate from a landlord. In light of this policy, Nuckolls refused to consider any evidence that Plaintiff was prepared to present. She refused to consider that Plaintiff had been a model tenant for eight years. She refused to consider that Plaintiff had an agreement with the landlord to pay the August rent—even though Plaintiff's hearing file contained that very agreement. Nor was Plaintiff permitted to cross-examine the landlord or otherwise attack the assertion that her rent was late. In sum, the outcome had been decided before the hearing began. The notice to vacate was all Defendant needed to see.

Defendant promised a written decision within fourteen business days and proceeded to miss the deadline. Only after prodding from counsel did Defendant issue a final decision on September 25, 2014. Defendant upheld the termination for violation of a "Family Obligation under the program as listed in 24 CFR 982.551." Compl. exh. 5. The letter (contradictorily) explained that Plaintiff attempted to pay August rent and that "[n]ot paying rent in accordance with your lease agreement is a serious violation of your lease." *Id.* Despite the fact that the

4

agreement between the landlord and Plaintiff for August rent was sitting in the hearing file, the final decision further concluded that "MHA has no written agreement between you and the owner substantiating that there was a mutual agreement to pay your rent late." *Id.*

## ARGUMENT

"The primary function of a preliminary injunction is to preserve the status quo until, upon final hearing, a court may grant full, effective relief." *Kan. City S. Transp. Co. v. Teamsters Local Union No. 41*, 126 F.3d 1059, 1066 (8th Cir. 1997) (internal quotation marks omitted). The Eighth Circuit announced its standard for preliminary relief in *Dataphase Systems, Inc. v. C.L. Systems, Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc):

> [W]hether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest.

Under this test, no single factor is determinative. *Dataphase,* 640 F.2d at 113; *Kan. City,* 126 F.3d at 1066. Rather, all of the factors must be balanced to determine whether to grant the injunction. *Int'l Ass'n of Machinists & Aerospace Workers v. Schimmel*, 128 F.3d 689, 692 (8th Cir. 1997). In considering the likelihood of the movant prevailing on the merits, "a court does not decide whether the movant will ultimately win." *PCTV Gold, Inc. v. SpeedNet, LLC*, 508 F.3d 1137, 1143 (8th Cir. 2007). While "an injunction cannot issue if there is no chance on the merits, the Eighth Circuit has rejected a requirement [that the] party seeking preliminary relief prove a greater than fifty per cent likelihood that he will prevail on the merits." *Id.* (internal quotation marks and citations omitted). If, as here, the preliminary injunction "is sought to enjoin something other than government action based on presumptively reasoned democratic processes"—*e.g.*, a statute—then the test is whether the plaintiff has a "fair chance of

prevailing." *Planned Parenthood v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008) (en banc).

In the instant case, the equities favor the issuance of preliminary relief. For the reasons set forth below, it is likely that Plaintiff will succeed on the merits. Without her Section 8 benefits, Plaintiff faces the irreparable harm of homelessness, and any injury that Defendant experiences as a result of a preliminary injunction is *de minimis* in comparison. Finally, the public interest favors the reinstatement of Plaintiff's Section 8 benefits until this case is resolved on its underlying merits.

## I.  PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS

Plaintiff has brought an eight-count complaint alleging violations of constitutionally protected due process and federal housing law. The first three counts focus on Defendant's policy of terminating housing benefits immediately upon a notice to vacate and without a judicial determination that eviction is appropriate. This policy violates Plaintiff's right to procedural due process (Count I), Plaintiff's right to substantive due process (Count II), and federal housing regulations (Count III). The last five counts focus on Defendant's policies toward informal hearings in situations where a Section 8 voucher recipient challenges termination of her benefits on the basis of a notice to vacate. Defendant violated Plaintiff's procedural due process rights and federal regulations by failing to provide a sufficient notice of the ground for termination prior to an informal hearing (Count IV); by failing to permit evidence and cross-examination of witnesses (Count V); by failing to base its final termination decision upon the evidence presented at the hearing (Count VI); by failing to provide an impartial hearing officer (Count VII); and by failing to issue a timely and adequate written decision after the informal hearing (Count VIII). Each of Plaintiff's claims is enforceable through 42 U.S.C. § 1983, and each is likely to succeed on the merits.

6

A.    **Plaintiff's claims are enforceable through 42 U.S.C. § 1983.**

Plaintiff brings her claims under 42 U.S.C. § 1983. Section 1983 provides a private right of action against state actors who cause "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." This language permits private enforcement of rights guaranteed by the Constitution, such as the rights to substantive and procedural due process that Plaintiff claims here. *See, e.g., Sitzes v. City of W. Memphis*, 606 F.3d 461, 475 (8th Cir. 2010).

Section 1983 also permits private enforcement of rights guaranteed by federal statute. *See Maine v. Thiboutot,* 448 U.S. 1, 7–8 (1980). To be enforceable under § 1983, a federal statute must "give[] rise to a federal right" rather than simply stating an obligation under federal law. *See Pediatric Specialty Care, Inc. v. Ark. Dep't of Human Servs.*, 293 F.3d 472, 477 (8th Cir. 2002). A statute gives rise to a federal right if (1) it was intended to benefit the putative plaintiff; (2) if it is not so vague and amorphous as to be beyond judicial competence; and (3) if it creates a binding obligation on the governmental unit. *See id.* at 477–78.

Courts have regularly applied these principles to claims under the United States Housing Act, 42 U.S.C. § 1437 *et seq.*, and its implementing regulations, provided that the plaintiff identifies the particular part of the statute that guarantees the right she claims. *See Hunter v. Underwood*, 362 F.3d 468, 478 (8th Cir. 2004). The seminal decision on this issue is *Wright v. City of Roanoke Redevelopment & Housing Authority*, 479 U.S. 418 (1987). In *Wright*, the Court interpreted 42 U.S.C. § 1437a. That statute stated that "[a] family shall pay as rent" no more than thirty percent of income, where implementing regulations defined "rent" to mean a "reasonable" amount of utilities. *See id.* at 420 & n.2–3. The Court held that the plaintiff could bring suit to enforce these provisions—specifically, to challenge utilities charged as excessive—under § 1983. The Court found that the rent ceiling was a "mandatory limitation focusing on the

individual family and its income" and that its "intent to benefit tenants is undeniable." *Id.* at 430. The Court also held that the implementing regulations defining "reasonable" utilities were not so vague as to be beyond judicial competence. *See id.* at 431–32.

Consistent with *Wright*, Plaintiff's statutory and regulatory claims are enforceable through § 1983. First, Count III of the complaint seeks to enforce 42 U.S.C. § 1437f(o)(7), as implemented by 24 C.F.R. § 982.311. The statute governs housing assistance payment ("HAP") contracts between public housing authorities (such as Defendant) and housing owners. Each contract "shall provide" that "the owner shall not terminate the tenancy except for serious or repeated violation of the terms and conditions of the lease, for violation of applicable Federal, State, or local law, or for other good cause." 42 U.S.C. § 1437f(o)(7)(C). The regulation further elaborates that "if the owner has commenced the process to evict the tenant, and if the family continues to reside in the unit, the [public housing agency] must continue to make housing assistance payments to the owner in accordance with the HAP contract until the owner has obtained a court judgment or other process allowing the owner to evict the tenant." 24 C.F.R. § 982.311(b). By ensuring the continuation of housing and Section 8 assistance absent adequate justification, these provisions benefit tenants such as Plaintiff. Moreover, each requirement is mandatory and is within judicial competence. Therefore, Plaintiff may enforce these rights through § 1983. *See Pediatric Specialty Care*, 293 F.3d at 477–78.

Second, Counts IV–VI and Count VIII seek to enforce 42 U.S.C. § 1437d(k) and its implementing regulation, 24 C.F.R. § 982.555.[1] The statute says that HUD "shall by regulation require" public housing agencies to "establish and implement an administrative grievance procedure" providing tenants process to challenge agency actions. The language of the statute

---

[1] As explained in Part I.B.ii *infra*, these counts also assert parallel violations of procedural due process. Insofar as Plaintiff's claims independently implicate due process, they are enforceable under § 1983. *See, e.g., Sitzes*, 606 F.3d at 475.

and regulation is clearly intended to benefit tenants, is mandatory, and is easily within judicial competence. *See Pediatric Specialty Care*, 293 F.3d at 477–78. Accordingly, multiple courts have found that plaintiffs may enforce 42 U.S.C. § 1437d(k) and 24 C.F.R. § 982.555 through § 1983. *See, e.g., Fields v. Omaha Hous. Auth.*, No. 8:04CV554, 2006 U.S. Dist. LEXIS 10043, at *9–10 (D. Neb. Jan. 23, 2006) (collecting cases); *Davis v. City of New York*, 902 F. Supp. 2d 405, 440–41 (S.D.N.Y. 2012); *Stevenson v. Willis*, 579 F. Supp. 2d 913, 921–23 (N.D. Ohio 2008); *Gammons v. Mass. Dep't of Hous. & Cmty. Dev.*, 523 F. Supp. 2d 76, 84 (D. Mass. 2007).

Finally, to impose liability on a municipal entity (such as Defendant) under § 1983, the plaintiff must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Slaven v. Engstrom*, 710 F.3d 772, 780 (8th Cir. 2013) (internal quotation marks omitted). Plaintiff has alleged such a policy here—namely, Defendant's policy of terminating Section 8 benefits solely upon receipt of a notice to vacate and of refusing to hear evidence that would contradict the notice to vacate. Through a demand letter addressed to Rodney Forte, MHA's executive director, Plaintiff requested that the hearing officer's determination be reversed as contrary to law. *See* Compl. exh. 6. Forte's inaction on the demand letter after a period of a month confirms that it is Defendant's policy to terminate benefits solely upon receipt of a notice to vacate.

**B.    Plaintiff's claims are substantively meritorious.**

As discussed above, Plaintiff's claims fall into two categories. The first, articulated at Counts I–III, challenges Defendant's decision to terminate her benefits solely upon the basis of a notice to vacate. The second, articulated at Counts IV–VIII, challenges the procedures Plaintiff was provided to contest termination of benefits. Plaintiff is likely to succeed on each individual count.

### i.    Termination of Benefits Solely Based on Notice to Vacate.

At the informal hearing, Defendant—through its hearing officer, Asonja Nuckolls, and its employee, Marshall Nash—made crystal clear that, as a matter of policy, a notice to vacate received from a landlord is the sole and dispositive factor governing termination of benefits. Nothing a tenant could say would matter in the face of that document. For example, at the informal hearing, Plaintiff's counsel tried to clarify Defendant's position:

> You're basically saying that any time a landlord makes an agreement with you to accept payment late and then reneges on the agreement, he's allowed to have the tenant be terminated from her voucher at that point and just—you have no control over that.

Nuckolls responded, "That's correct." Compl. exh. 4, Transcript at 20. Nash then interjected and the following conversation ensued:

NASH:       I think what you're saying is they rely on the four corners of the docket [*i.e.*, the notice to vacate]. They can't . . .

NUCKOLLS:   Exactly. We rely on what's in writing.

NASH:       This person could come in here and say there was no agreement. She says there is an agreement. So they just go by the document, sir.

*Id.* Later on, Plaintiff's counsel again sought clarification on Defendant's policy:

COUNSEL:    If y'all receive a notice to vacate by the landlord, regardless of the reason, rent or any other reason, is the Housing Authority's position that the voucher will be terminated at that point?

NUCKOLLS:   If it's a violation of family obligations, yes.

COUNSEL:    Just by receiving that notice, without a court order finding that the tenant, in fact, did violate the terms of the lease?

NUCKOLLS:   That is correct.

*Id.* at 26–27.

Thus, it is Defendant's stated policy to terminate benefits solely upon receipt of a notice to vacate from a landlord. *See also* Compl. ¶49. Evidence showing that the landlord served the notice to vacate falsely or with bad motive does not matter. Mitigating circumstances do not matter. It does not even matter whether the landlord has taken the additional step of initiating judicial process, much less whether there has been a judicial eviction order. Defendant's policy deprives Plaintiff and other tenants of any *meaningful* opportunity for a hearing, arbitrarily deprives Plaintiff and other tenants of property, bears no rational relationship to the purpose of the Section 8 program, and violates federal law.

### 1. Procedural due process (Count I)

It is well established that Plaintiff has cognizable property right in her Section 8 voucher. *See Jeffries v. Ga. Residential Fin. Auth.*, 678 F.2d 919, 925 (11th Cir. 1982). It is also well established that a housing authority may not terminate a Section 8 voucher without a hearing. *See, e.g., Clark v. Alexander*, 85 F.3d 146, 150 (4th Cir. 1996). The specific requirements of that hearing are discussed in Part I.B.ii *infra*. At the very least, however, the hearing must be "meaningful." *See Mathews v. Eldridge*, 424 U.S. 319, 349 (1976) (holding that the government may not deprive people of property without "a meaningful opportunity to present their case"). Even if the hearing is offered, due process is lacking if the opportunity to present one's case at the hearing is "effectively emasculated." *See Baird v. Bd. of Educ.*, 389 F.3d 685, 693 (7th Cir. 2004). In short, if the outcome of the hearing is pre-determined, there can be no due process.

Here, Defendant made it abundantly clear that its policy is to terminate benefits based solely upon a notice to vacate received from a landlord. In light of that policy, Plaintiff's hearing was meaningless, as would be any hearing concerning a termination based upon a notice to vacate. In principle, the tenant has the opportunity to be heard or to present evidence. However,

that opportunity is hollow, because the sole consideration at the hearing is, as Nash put it, the "four corners" of the notice to vacate. Indeed, despite clear evidence in Plaintiff's hearing file that she and the landlord had an agreement about her rent, *see* Compl. exh. 1, Nuckolls willfully refused to consider that evidence. Instead, she found that the notice to vacate conclusively established that Plaintiff had violated her lease. Given the dispositive nature of the notice to vacate, Plaintiff's hearing was futile and due process was denied.

### 2. Substantive due process (Count II)

The government violates the substantive portion of the due process clause when it arbitrarily deprives a person of property. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845–46 (1998) ("We have emphasized time and again that the touchstone of due process is protection of the individual against arbitrary action of government, whether the fault lies in a denial of fundamental procedural fairness . . . or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective.") (internal quotation marks and citations omitted); *TXO Prod. Corp. v. Alliance Res. Corp.*, 509 U.S. 443, 467 (1993) (Kennedy, J., concurring) (discussing Constitution's "fundamental guarantee" that "the individual citizen may rest secure against arbitrary or irrational deprivations of property"). In the present context, this means that a housing authority's basis for terminating assistance must bear some rational relationship to the purpose of the housing program. Defendant has previously had to learn this point the hard way. In *Thomas v. Housing Authority of the City of Little Rock*, 282 F. Supp. 575 (E.D. Ark. 1967), the court considered whether Defendant violated substantive due process by maintaining a policy that categorically forbade unwed mothers from public housing. The court first explained that Defendant "cannot act arbitrarily or capriciously in selecting and evicting its tenants" and that Defendant's policies "must bear a reasonable relationship to the low

rent housing program and the proper operation thereof." *See Thomas*, 282 F. Supp. at 579. The court then held that the policy ran afoul of the Fourteenth Amendment, given its "fatal vices" of "inflexibility" and "general disharmony with the spirit and aim of the low rent housing program." *Id.* at 580.

In light of this precedent, Plaintiff has more than a fair chance of succeeding on the merits of her substantive due process claim. First, Defendant's policy of automatically terminating assistance upon receipt of a notice to vacate bears the same inflexibility that doomed the unwed-mothers policy. The notice to vacate simply represents the word of the landlord that a tenant is late on rent. Defendant's position is that the circumstances surrounding the notice are irrelevant. Indeed, Defendant is indifferent to whether the landlord's representations in the notice are even true. That sort of inflexibility renders the policy unconstitutionally arbitrary.

Moreover, the policy bears no rational relationship to the purpose of the Section 8 program, which is to provide safe and dignified housing to people of limited means. Arkansas law permits landlords complete discretion to issue notices to vacate if rent is even one day late. *See* Ark. Code Ann. § 18-16-101. Defendant's policy means that the continuance of a tenant's benefits is totally discretionary with the landlord. It also means that Defendant views the late payment of rent *by even one day* as a sufficient ground to take away housing assistance. These aspects of the policy are simply incompatible with the purpose of the Section 8 housing program.

### 3. 42 U.S.C. § 1437f(o)(7) and 24 C.F.R. § 982.311 (Count III)

HUD regulations recognize that the Section 8 program is ill served by immediate termination of benefits upon a landlord's whim. Accordingly, if a landlord seeks to evict a recipient of Section 8 benefits, Defendant is required to continue providing housing assistance until there is a judicial eviction order:

> Housing assistance payments terminate when the lease is terminated by the owner in accordance with the lease. *However, if the owner has commenced the process to evict the tenant, and if the family continues to reside in the unit, the PHA must continue to make housing assistance payments to the owner in accordance with the HAP contract until the owner has obtained a court judgment or other process allowing the owner to evict the tenant.* The HA may continue such payments until the family moves from or is evicted from the unit.

24 C.F.R. § 982.311(b) (emphasis added).

Defendant's policy is an obvious violation of this regulation. Defendant may not simply terminate assistant payments after receiving a notice to vacate—instead, it must await a judicial order that permits the landlord to evict. Otherwise, the tenant's benefits are at the caprice of the landlord. Indeed, the landlord here never obtained a judicial order to evict Plaintiff, even after two attempts to do so. In short, the regulation bolsters what due process requires—an adequate and non-arbitrary finding that a tenant's actions justify the serious decision to revoke housing subsidies.

ii.   **Informal Hearing.**

Section 8 benefits cannot be terminated without a hearing, which must be conducted in a manner that comports with due process. *See Goldberg v. Kelly*, 397 U.S. 254 (1970); *Loving v. Brainerd Hous. & Redevelopment Auth.*, No. 08-1349, 2009 U.S. Dist. LEXIS 8664, at *13 (D. Minn. Feb. 5, 2009) (citing *Goldberg*, 397 U.S. at 267–68). Such a hearing requires, at minimum, "(1) timely notice from the housing authority stating the basis for the proposed termination, (2) an opportunity by the tenant to confront and cross-examine each witness relied on by the housing authority, (3) the right of the tenant to be represented by counsel, (4) a decision, based solely on evidence adduced at the hearing, in which the reasons for the decision are set forth, and (5) an impartial decision maker." *Clark*, 85 F.3d at 150 (citing *Goldberg*, 397 U.S. at 266–71).

14

Additionally, federal regulations govern the conduct of pre-termination hearings and provide protections that are co-extensive with the requirements of due process. *See id.* Thus, a violation of the regulations is also a violation of the procedural due process guaranteed by the Fourteenth Amendment.

### 1. Failure to provide sufficient termination notice (Count IV)

If a housing authority elects to terminate assistance, it must provide the benefit recipient with a "prompt written notice" that (1) contains "a brief statement of reasons for the decision"; (2) states the family's right to request an informal hearing on the decision; and (3) states the deadline for the family to request such a hearing. 24 C.F.R. § 982.555(c)(2). This requirement permits a person to adequately prepare for a hearing on termination of benefits. *See Loving*, 2009 U.S. Dist. LEXIS 8664, at *13–14.

Here, MHA's termination letter failed to provide Plaintiff with adequate notice as to why her housing voucher was being terminated. In pertinent part, the Termination Letter reads: "This letter is to advise you that a review of your tenant file indicates that you have not complied with the requirements of the housing choice voucher program. Specifically: **Ten day Eviction Notice to vacate for back rent owed in the amount of $303 for August**." *See* Compl. exh. 3. The case law is clear that such bare summaries—failing to identify even the implicated regulation and failing to provide any context for the grounds for termination—are insufficient to provide the requisite notice. *See Loving,* 2009 U.S. Dist. LEXIS 8664, at *13–16 (notice merely stating "you have . . . engaged in drug related or violent criminal activity" insufficient to adequately inform plaintiffs of grounds for termination); *Jones v. Lansing Hous. Comm'n*, No. 5:03-cv-123, 2003 U.S. Dist. LEXIS 28327, at *4–5, 16–19 (W.D. Mich. Sept. 19, 2003) (finding that a single sentence, "Failure to comply with program requirements, misrepresentation of monthly rent, and

utilities paid by you—not the landlord," was insufficient notice). Even notice letters that simply outline the purported statutory violation—more than Defendant's notice did here—fail to comply with § 982.555(c)(2) and due process. *See Young v. Maryville Hous. Auth.*, No. 3:09-cv-372009 U.S. Dist. LEXIS 56539, at *18 (E.D. Tenn. July 2, 2009) (notice insufficient where it "simply 'parroted' the statute" giving rise to the decision to terminate housing benefits); *Pratt v. Hous. Auth.*, No. 05-0544, 2006 U.S. Dist. LEXIS 70575, at *19–30 (D.N.J. Sept. 27, 2006) (same); *Edgecomb v. Hous. Auth.*, 824 F. Supp. 312, 315 (D. Conn. 1993) (same).

Defendant's one-sentence notice failed to state the statutory grounds for terminating Plaintiff's assistance. By providing deficient notice, Defendant impeded Plaintiff's ability to adequately prepare for her informal hearing, violated Plaintiff's due process rights, and violated 24 C.F.R. § 982.555(c)(2).

## 2. Failure to permit evidence and cross-examination of witnesses (Count V)

Under 24 C.F.R. § 982.555(e)(5), the tenant "must be given the opportunity to present evidence, and may question any witnesses." Defendant violated both of these requirements. First, the hearing transcript is clear that Plaintiff was permitted no opportunity to present evidence concerning the notice to vacate—rather, Defendant limited its decision to the "four corners" of the notice. Second, Plaintiff had no opportunity to question the underlying assertion of nonpayment of rent in the notice. As Nash put it, "This person could come in here and say there was no agreement. She says there is an agreement. So they just go by the document, sir." Compl. exh. 4, Transcript at 20. "The document," however, was nothing more than the landlord's untested statement that Plaintiff failed to pay rent.

The regulation does not demand that hearsay evidence be excluded. In fact, 24 C.F.R. § 982.555(e)(5) provides that the rules of evidence do not apply to pre-termination hearings.

However, where the sole piece of dispositive evidence is an uncorroborated statement, due process as well as the regulation require that the statement be subject to cross-examination. *Edgecomb*, 824 F. Supp. at 316 ("Denying the tenant the opportunity to confront and cross-examine persons who supplied information upon which the housing authority's action is grounded is improper." (citing *Escalera v. New York City Hous. Auth.*, 425 F.2d 853, 862 (2d Cir. 1970))). At the very least, the housing authority must present some evidence that supports the reliability of the statement found in the hearsay document. *See Woods v. Willis*, 515 F. App'x 471, 483–84 (6th Cir. 2013) ("[A]ssuming, *arguendo*, that hearsay evidence can constitute substantial evidence to support a § 8 housing termination decision, the evidence must be at the very least reliable and of proven probative value."). Here, Defendant relied solely on the notice to vacate and presented nothing to bolster its reliability. Accordingly, Defendant violated the regulation and Plaintiff's due process rights.

### 3.  Failure to base decision upon evidence at hearing (Count VI)

Under 24 C.F.R. § 982.555(e)(6), a tenant facing termination of benefits is entitled to a decision based upon the preponderance of the evidence: "Factual determinations relating to the individual circumstances of the family shall be based on a preponderance of the evidence presented at the hearing." As is manifest from the hearing transcript, Nuckolls refused to consider *any* evidence other than the notice to vacate—even though there was contrary evidence in Plaintiff's hearing file. Indeed, Nuckolls refused even to articulate who bore the burden of proof at the hearing and failed to articulate the preponderance standard. Perhaps she was unwilling weigh the evidence; perhaps she was simply unaware of her obligation under 24 C.F.R. § 982.555(e)(6). Either way, an adjudicator cannot render a decision based on a preponderance of the evidence when she neither articulates the standard of proof nor considers

the entirety of evidence available. Indeed, an uncorroborated hearsay statement is insufficient to establish a grounds for termination—particularly as the Section 8 procedures do not permit a tenant an opportunity to subpoena a landlord who provides a notice to vacate. *See Basco v. Machin*, 514 F.3d 1177, 1183 (11th Cir. 2008) (holding that uncorroborated police report was insufficient by itself to establish that tenant violated regulations by permitting an unauthorized resident in home); *Edgecomb*, 824 F. Supp. at 316 (distinguishing case where person challenging termination of benefits has subpoena power).

### 4.  Failure to provide impartial hearing officer (Count VII)

"[I]f plaintiff is entitled to a hearing, it must be a fair one and therefore must be before an impartial body." *Wilson v. Lincoln Redevelopment Corp.*, 488 F.2d 339, 342 (8th Cir. 1973) (citing *Goldberg*, 397 U.S. at 271). A hearing officer may not act as both advocate and adjudicator in the pre-termination hearing. *Stevenson*, 579 F. Supp. 2d at 920. The facts in *Stevenson* are particularly apt: as here, the hearing officer relied exclusively on statements made by the participant's landlord who, like Plaintiff's landlord, was not present at the hearing. *Id*. at 916. The court found that the hearing officer acted "both as advocate and adjudicator" and thereby "amplified the danger to plaintiff's right to procedural due process already posed by her reliance on untested hearsay." *Id*. at 920.

While the hearing officer in *Stevenson* was quite literally the same person who presented evidence on behalf of the housing agency at the hearing, this case also crosses the line. Not only was Nuckolls' mind made up before the hearing (given her repeated refusal to consider evidence besides the notice to vacate); Nash's derisive treatment of Plaintiff's case and his repeated assistance to Nuckolls during the proceeding violated the fairness of the hearing and improperly placed Nash in the role of hearing officer. *See* Compl. ¶¶41–43, 47. A tenant is deprived of an

unbiased hearing when attorney of the housing agency advises the hearing officer during the proceedings. *See Piretti v. Hyman*, No. 79-622-K, 1979 U.S. Dist. LEXIS 15386, at *13 (D. Mass. July 23, 1979) ("If [the housing authority] wish[es] the attorney to serve as [its] zealous advocate, it cannot be given to him to serve also as the adviser to the impartial decision maker.").

### 5.  Inadequate written final decision (Count VIII)

Federal regulations dictate that after an informal hearing, the hearing officer must issue a written formal statement giving the reasons for the decision, which shall be "furnished promptly." 24 C.F.R. § 982.555(e)(6). Here, Defendant's letter made only the barest conclusory statements of law and fact. It simply enumerated the following:

- MHA Administrative Plan Ch.15 *Denial or Termination of Assistance*. If any family member violates any Family Obligation under the program as listed in 24 CFR 982.551.

- You attempted to pay your August 2014 rent of $303 late however owner refused to accept it. MHA has no written agreement between you and the owner substantiating there was a mutual agreement to pay your rent late.

- Not paying rent in accordance with your lease agreement is a serious violation of your lease.

Compl. exh. 5.

Courts have found post-hearing letters containing similar or greater information insufficient to comport with the regulation and due process. *See, e.g., Boykins v. Cmty. Dev. Corp.*, No. 10-cv-3788, 2011 U.S. Dist. LEXIS 28650, at *10–12 (E.D.N.Y. Mar. 21, 2011) (letter insufficient when it cited 24 C.F.R. §§ 982.551–52, stated that evidence at hearing was carefully considered, and stated that housing authority proved by a preponderance of the evidence that Plaintiff's benefits should be terminated); *Brantley v. W. Valley City Hous. Auth.*, No. 2:08CV573DAK, 2009 U.S. Dist. LEXIS 10824, at *15 (D. Utah Feb. 4, 2009) (procedural due process violation where post-termination letter had "no application of the facts or mention of

Plaintiff's arguments" and where "[d]efendant presented little, if any, evidence at the hearing [and instead] relied on its position that the state criminal proceedings met the preponderance of the evidence requirement").

Even more egregious is the statement that "MHA has no written agreement between you and the owner substantiating there was a mutual agreement to pay your rent late." Compl. exh. 5. This statement is demonstrably false. Plaintiff's hearing file, which Nuckolls possessed, contained a document entitled "Authorization for Mutual Rescission of Section 8 Lease." *See* Compl. exh. 1. In the portion of the document asking whether Plaintiff's account is delinquent, the Landlord represented that Plaintiff owed $303 for August rent. However, the Landlord bracketed this portion of the form and noted that Plaintiff's rent obligations were satisfied: "Rental Realty is releasing Brenda Glover from her current lease. **Her outstanding balance owed will be paid with her security deposit that she put down**." (Emphasis added). A final decision that makes deliberate falsehoods is inadequate under the rules and violates due process.[2]

## II.   PLAINTIFF WILL SUFFER IRREPARABLE HARM WITHOUT PRELIMINARY RELIEF

"Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Rogers Grp., Inc. v. City of Fayetteville*, 629 F.3d 784, 789 (8th Cir. 2010) (internal quotation marks omitted). Involuntary displacement from one's home is *per se* irreparable harm. *See Johnson v. U.S. Dep't of Agric.*, 734 F.2d 774, 789 (11th Cir. 1984) ("[I]rreparable injury is suffered when one is wrongfully ejected from his home."); *Palmer v. Upland Hous. Auth.*, No. 12-2074, 2013 U.S. Dist. LEXIS

---

[2] Beyond its critically infirm legal and factual analysis, Defendant's post-termination letter also suffered from being impermissibly late. The pre-termination hearing took place on September 4, 2014. The post-hearing decision, however, was dated September 25, 2014, three weeks after the hearing. *See* Compl. exh. 5. The tardiness of the final decision is simply another way in which Defendant violated the regulation. Even had it arrived on time, Plaintiff would be likely to succeed on this count.

27211, at *40–41 (C.D. Cal. Feb. 21, 2013) ("The imminent threat that Plaintiffs will become homeless without Section 8 assistance constitutes irreparable harm.").

Here, Plaintiff will suffer irreparable harm in the absence of a preliminary injunction. Because Plaintiff is disabled and her monthly income is only $746.00 per month, she cannot afford housing without rental assistance. Since MHA terminated her Section 8 assistance, Plaintiff has been forced to move out of her apartment and to rely on a friend for shelter. This situation has forced her separation from her grandchild, whom she would be living with and caring for had her assistance payments continued. The instability of Plaintiff's living situation and the disruption of her family life is an irreparable injury that would be remedied by restoration of Plaintiff's Section 8 benefits.

### III.    THE BALANCE OF HARDSHIP TILTS STRONGLY IN FAVOR OF PLAINTIFF

The balance of Plaintiff's need for Section 8 assistance against Defendant's hardship in providing it also supports injunctive relief. Without continued Section 8 assistance during the pendency of this action, Plaintiff will be rendered homeless and dependent upon others for shelter. To correct this hardship, Defendant need only provide Plaintiff with the subsidies it had previously provided for a number of years—a minor blip on Defendant's budget. Defendant's hardship is *de minimis*; Plaintiff's need is great.

### IV. THE PUBLIC INTEREST WOULD BE BEST SERVED BY GRANTING INJUNCTIVE RELIEF

Finally, the public interest and public policy weigh in favor of injunctive relief. The public interest favors housing for all citizens and disfavors homelessness. Moreover, the public interest disfavors the deprivations of public assistance without due process that Plaintiff is likely to ultimately show on the merits. "Our society as a whole suffers when we neglect the poor, the hungry, the disabled, or when we deprive them of their rights or privileges." *See Lopez v.*

*Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983). Accordingly, this factor supports a preliminary injunction.

### CONCLUSION

Plaintiff is likely to succeed in showing that Defendant violated her due process rights and federal law by terminating her Section 8 assistance solely on the basis of a notice to vacate. Plaintiff faces the irreparable harm of homelessness without preliminary relief; that harm weighs heavily against the *de minimis* burden to Defendant of providing benefits during the pendency of this action; and the public interest favors relief. Therefore, Plaintiff respectfully requests that the Court enter a preliminary injunction restoring her Section 8 Housing benefits.

Dated: November 3, 2014                    Respectfully submitted,


/s/ John C. Williams
David Slade (Ark. Bar No. 2013143)
John C. Williams (Ark. Bar No. 2013233)
Hank Bates (Ark. Bar No. 98063)
CARNEY BATES & PULLIAM, PLLC
11311 Arcade Drive, Suite 200
Little Rock, AR 72212
Telephone: (501) 312-8500
Fax: (501) 312-8505
dslade@cbplaw.com
jwilliams@cbplaw.com
hbates@cbplaw.com

*ATTORNEYS FOR PLAINTIFF*

22
