**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**BRENDA GLOVER, on behalf
of herself and all others similarly
situated,**                                                                                      **PLAINTIFF**

**v.**                                        **CASE NO. 4:14-cv-644-JLH**

**HOUSING AUTHORITY OF THE
CITY OF LITTLE ROCK, d/b/a
METROPOLITAN HOUSING
ALLIANCE, and RODNEY FORTE,**
**Executive Director of Metropolitan
Housing Alliance, in his Official Capacity,**                      **DEFENDANTS**

<u>**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**</u>

David Slade (ABN 2013143)
John C. Williams (ABN 2013233)
Hank Bates (ABN 98063)
CARNEY BATES & PULLIAM, PLLC
2800 Cantrell Road, Suite 510
Little Rock, AR  72202
Tel:  (501) 312-8500
Fax:  (501) 312-8505
dslade@cbplaw.com
jwilliams@cbplaw.com
hbates@cbplaw.com

*Attorneys for Plaintiff and
the Proposed Class*

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

I.    INTRODUCTION ...................................................................................................1

II.    STATEMENT OF FACTS ......................................................................................3

    A.    FACTUAL BACKGROUND ......................................................................3

        1.    The Section 8 Housing Voucher Program and Its Governing Federal Regulations ...................................................3

            a.    A Section 8 Voucher May Not Be Terminated Following a Landlord's Utilization of Arkansas's "Criminal Eviction Statute" ...........................................3

            b.    MHA Must Provide Sufficient Administrative Grievance Procedures Upon Terminating Section 8 Benefits ...........................................................................5

        2.    The Termination of Plaintiff's Section 8 Benefits ......................................6

        3.    Discovery Has Revealed That MHA's Conduct is Systemic....................11

            a.    MHA Terminates Benefits Upon Receipt of Notice to Vacate Letters ...................................................11

            b.    MHA's Inconsistent Notice of Termination Letters Omit Federally-Required Information ...........................................13

            c.    MHA Does Not Have a Consistent Training Protocol for Its Hearing Officers ...................................13

    B.    PROCEDURAL POSTURE ...................................................................14

III.    LEGAL ANALYSIS............................................................................................15

    A.    APPLICABLE LEGAL STANDARDS ..................................................15

    B.    THE CLASS SATISFIES THE REQUIREMENTS OF RULE 23(a) ......................................................................................................16

        1.    The Class Is Too Numerous For Joinder of Claims to be Practicable ................................................................................16

2.      The Class Members' Claims Involve Common Questions
        of Law and Fact ...................................................................................17

3.      Plaintiff's Claims Are Typical of Those of the Class ..............................19

4.      Representative Plaintiff and Her Chosen Counsel Will
        Fairly and Adequately Protect the Interests of the Class .........................20

C.      THE CLASS SATISFIES THE REQUIREMENTS OF RULE
        23(b)....................................................................................................22

1.      Defendant Has Acted or Refused to Act on Grounds That
        Apply Generally to the Class, So That Final Injunctive
        Relief and Corresponding Declaratory Relief is Appropriate
        Respecting the Class as a Whole .............................................................22

IV.   CONCLUSION...................................................................................................23

# TABLE OF AUTHORITIES

**CASES**                                                                           **PAGE**

*Alpern v. UtiliCorp United, Inc.*,
   84 F.3d 1525, 1540 (8th Cir. 1996) .........................................................................19

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (U.S. 1997) .......................................................................................20

*Arkansas Educ. Ass 'n v. Bd. Of Educ., Portland, Ark. Sch. Dist.*,
   446 F.2d 763 (8th Cir. 1971) ..................................................................................16

*Baer v. G&T Trucking Co.*,
   No. Civ. 03-3460 (PAM/JSM), 2005 WL 563107 (D. Minn. Mar. 1, 2005) ...........16

*Beckmann v. CBS, Inc.*,
   192 F.R.D. 608 (D. Minn. 2000) ............................................................................18

*Blades v. Monsanto Co.*,
   400 F.3d 563 (8th Cir. 2005) ..................................................................................18

*Caroline C. v. Johnson*,
   174 F.R.D. 452 (D. Neb. 1996) .........................................................................16, 22

*Coley v. Clinton*,
   635 F.2d 1364 (8th Cir. 1980) ................................................................................18

*Comcast Corp. v. Behrend*,
   133 S. Ct. 1426 (2013) ...........................................................................................16

*DeBoer v. Mellon Mortg. Co.*,
   64 F.3d 1171 (8th Cir. 1995) ..................................................................................22

*Donaldson v. Pillsbury Co.*,
   554 F.2d 825 (8th Cir. 1977) ..................................................................................19

*Doran v. Mo. Dep't of Soc. Servs.*,
   251 F.R.D. 401 (W.D. Mo. 2008) ..........................................................................22

*Eastwood v. Southern Farm Bureau Cas. Ins. Co.*,
   2013 U.S. Dist. LEXIS 78929 (W.D. Ark. June 5, 2013) .............................. 17 fn 12

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ...............................................................................................15

*Elizabeth M v. Ross*,
　No. 8:02CV585, 2005 U.S. Dist. LEXIS 45107 (D. Neb. May 11, 2005).................................16

*Gen. Tel. Co. of the Southwest v.Falcon*,
　457 U.S. 147 (U.S. 1982)...........................................................................20

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
　644 F.3d 604 (8th Cir. 2011).......................................................................18

*Mehl v. Canadian Pac. Ry., Ltd.*,
　227 F.R.D. 505 (D. N.D. 2005).....................................................................15

*Neal v. Casey*,
　43 F.3d 48 (3d Cir. 1994)..........................................................................22

*Nelson v. Wal-Mart Stores, Inc.*,
　245 F.R.D. 358 (E.D. Ark. 2007)...................................................................21

*Owner-Operator Indep. Drivers Ass'n v. Supervalu, Inc.*,
　2008 U.S. Dist. LEXIS 20420 (D. Minn. Mar. 14, 2008)..............................................22

*Paxton v. Union Nat'l Bank*,
　688 F.2d 552 (8th Cir. 1982).......................................................................16

*Reiter v. Sonotone Corp.*,
　442 U.S. 330 (1979)................................................................................16

*Robinson v. Sears, Roebuck & Co.*,
　111 F.Supp.2d 1101 (E.D. Ark. 2000) ...............................................15, 16, 19, 20

*State v. Brenda A. Glover*,
　Case No. LRCR-14-5108 ........................................................................ 7 fn 3

*State v. Brenda A Glover*,
　Case No. LRCR-14-5785 ........................................................................ 7 fn 3

*Thompson v. Am. Tobacco Co.*,
　189 F.R.D. 544 (D. Minn. 1999)....................................................................15

*Thompson v. Altoona Hous. Auth.*,
　2012 U.S. Dist. LEXIS 108975 (W.D. Pa. Aug. 2, 2012) ..................17, 18, 19, 20, 21, 23

*Wakefield v. Monsanto Co.*,
　120 F.R.D. 112 (E.D. Mo. 1988) ...................................................................19

*Wal-Mart Stores v. Dukes, Inc.*,
    131 S. Ct. 2541 (2011) ................................................................................................18, 22, 23

*Webb v. Missouri P.R.R.*,
    95 F.R.D. 357 (E.D. Ark. 1982) .........................................................................................19

## STATUTES REGULATIONS AND COURT RULES

Ark. Code § 18-16-101 ..........................................................................................1, 2, 4, 7, 12, 23

Ark. Stat. Ann. 50-523 .........................................................................................................................4

F.R.C.P. 23...............................................................................................1, 2, 3, 15, 16, 17, 19, 20, 22, 23

24 C.F.R. § 982.311 .............................................................................................................................4

24 C.F.R. § 982.551 .........................................................................................................................3, 11

24 C.F.R. § 982.552 ...........................................................................................................................3

24 C.F.R § 982.555 ............................................................................................................................5

42 U.S.C. § 1437.................................................................................................................................5

## OTHER AUTHORITIES

7A Charles A. Wright et al., Federal Practice and Procedure § 1775, at 470 (1986) ....................22

## I.      **INTRODUCTION.**

Plaintiff Brenda Glover ("Plaintiff") receives housing assistance through a voucher program ("Section 8") administered by the Housing Authority of the City of Little Rock, d/b/a/ Metropolitan Housing Alliance ("MHA" or "Defendant").  In August 2014, Plaintiff's lease was set to end. She arranged with her landlord to deduct her final rent payment from her security deposit.   The landlord subsequently refused to return the balance of the security deposit, however, and Plaintiff filed a complaint with the Arkansas Attorney General.  When the landlord learned about the complaint, he reneged on the rent agreement and served Plaintiff with a 10-day notice to vacate pursuant to Arkansas's "criminal eviction statute," Ark. Code Ann. § 18-16-101. The landlord also provided a copy of the notice to Defendant.  Defendant immediately notified Plaintiff that her Section 8 assistance was being terminated, despite the fact that there had not been (and would never be) a judicial order for eviction.  Though Plaintiff asserted her right to a hearing challenging the termination, Defendant refused to consider clear, written evidence that Plaintiff had not missed her rent payment and that the notice to vacate was a retaliatory act by her landlord.  At the hearing, the notice to vacate was the sole and dispositive factor for termination, despite the fact that HUD regulations and guidances expressly prohibit conditioning a termination on Arkansas's criminal eviction statute.

Plaintiff is not alone in her experience.  Defendant engages in a common course of conduct with regard to all Section 8 housing voucher recipients, depriving those individuals of protections afforded by federal statutes and regulations and guaranteed by their Constitutional right to due process.  Pursuant to FRCP 23(a) and 23(b)(2), Plaintiff seeks to certify a Class consisting of all persons receiving Section 8 housing vouchers from MHA, and seeks declaratory and injunctive relief arising from the following acts and practices of Defendant:

1

(1)     Terminating Section 8 housing voucher benefits when a voucher recipient has received a 10-day notice to vacate from a landlord, pursuant to Ark. Code Ann. § 18-16-101, without an accompanying judicial order of eviction;

(2)     Sending termination notice letters that fail to adequately provide notice of the reason for termination, the statutory or regulatory support for such termination, or the right of the recipient to have counsel, present and question witnesses, and present evidence at informal hearings;

(3)     Shifting the burden of proof at informal hearings, thereby requiring participants to disprove the allegations against them; and

(4)     Conducting informal hearings with partial, non-neutral decision makers who have not received adequate training.

For the reasons set forth below, Plaintiff satisfies the requirements of FRCP 23(a).  The central factual and legal questions in this litigation are common to Plaintiff and the Proposed Class—the Court must determine what termination and informal hearing procedures Defendant engaged in, and whether such practices are permissible under federal law—and these questions will be resolved by common proof.  Further, Plaintiff's claims stem from Defendant's systemic policies and procedures with regard to the termination of Section 8 benefits and the administrative grievance process, and are thus typical of the class.   Plaintiff has tenaciously challenged Defendant's termination of her benefits and has retained competent counsel, and thus is an adequate named representative of the Proposed Class.  Defendant has identified roughly 1,900 households currently receiving Section 8 vouchers, and thus the Proposed Class is sufficiently numerous.   Additionally, because Defendant has records of both the names and addresses of these Section 8 voucher recipients, the Proposed Class is sufficiently ascertainable.  Finally,

FRCP 23(b)(2) is satisfied, as Defendant has acted or refused to act on grounds that apply generally to the Proposed Class, so that declaratory and injunctive relief is appropriate respecting the Proposed Class as a whole.

Accordingly, the Court should grant the instant motion for Class Certification.

## II.    STATEMENT OF FACTS.

### A.    FACTUAL BACKGROUND.

#### 1.    The Section 8 Housing Voucher Program and Its Governing Federal Regulations.

Congress enacted the Section 8 Housing Voucher Program to provide payment to private landlords, on behalf of low-income families.  Under the program, municipal public housing authorities (such as MHA) sign annual contributions contracts with the United States Department of Housing and Urban Development ("HUD"), through which they agree to pay rental subsidies for eligible low-income families to obtain decent, safe, and sanitary housing.  MHA is the facilitator of the Section 8 Program in Little Rock, entering into contracts with landlords for housing-assistance payments on behalf of qualified participants such as Plaintiff ("HAP contracts").  In so doing, MHA is bound by the rules and regulations established by Congress and by HUD, including those described herein.

##### a.    A Section 8 Voucher May Not Be Terminated Following a Landlord's Utilization of Arkansas's "Criminal Eviction Statute."

Per HUD regulations, MHA may terminate a Section 8 voucher recipient's benefits only under a set of conditions enumerated in 24 CFR § 982.552(c)(1).  At issue in this litigation, pursuant to 24 C.F.R. § 982.552(c)(1)(i), MHA may revoke a participant's benefits if a family violates the obligations outlined in 24 C.F.R. § 982.551, including the commission of a "serious or repeated violation of the lease," as prohibited by 24 C.F.R. § 982.551(e).  However, when the

violation at issue is the non-payment of rent, and the landlord seeks to evict the tenant, HUD

regulations further clarify that benefits must continue to be conferred until the landlord has

obtained a judicial order evicting the tenant:

> Termination of payment:  When owner terminates the lease. Housing assistance payments terminate when the lease is terminated by the owner in accordance with the lease.  *However, if the owner has commenced the process to evict the tenant, and if the family continues to reside in the unit,* **the PHA must continue to make housing assistance payments to the owner in accordance with the HAP contract until the owner has obtained a court judgment or other process allowing the owner to evict the tenant**. The PHA may continue such payments until the family moves from or is evicted from the unit.

24 C.F.R. § 982.311(b) (emphasis added).

A series of opinion letters from HUD provide further, Arkansas-specific restraints on

terminations of Section 8 benefits arising from evictions by landlord.  Per these guidances, a

landlord may not utilize Arkansas's "criminal eviction statute," Ark. Code Ann. § 18-16-101, to

evict a Section 8 tenant, and correspondingly a housing authority such as MHA may not

terminate benefits based upon a Section 8 participant's receipt of a 10-day notice to vacate.[1]

Attached as Exhibit 1, a May 24, 1978 letter addresses "the appropriateness of use of Ark. Stat.

Ann. 50-523," later codified at Ark. Code Ann. § 18-16-101, "as a tool for eviction."  The author

states that the statute

> is not a judicial action for eviction.  It is merely a criminal statute that is utilized to threaten a tenant to vacate a property under threat of fine.  No reference at any point is made to eviction.  The

---

[1] Upon a tenant's failure to timely pay rent, the landlord may provide the tenant with a 10-day notice to vacate the premises.  If the notice is provided, and the tenant then fails to surrender the premises within ten days, she is guilty of a misdemeanor.  Ark. Code Ann. § 18-16-101(b)(1). The notice, with nothing more, does *not* constitute a judicial order of eviction.  As recognized in Ex.'s 1 and 2, this is not, technically, an eviction statute.  Indeed, because of the peculiarity of the statute, a judge never enters an order of *eviction* pursuant to Ark. Code Ann. § 18-16-101, but instead finds the tenant guilty of a misdemeanor.

> Arkansas eviction statute, a civil remedy, is found at 34-1501, *et seq.* This is the statute and procedures contemplated by [HUD regulations].

Ex. 1 at 1. While this letter only addressed the statute in the context of subsidized multi-family project housing, a subsequent letter from HUD makes clear that this opinion extends to Section 8 housing as well. On April 16, 1981, the Little Rock Area Office of HUD sent a letter to all public housing authorities (including MHA), alerting them to changes to Arkansas's unlawful detainer statute (the proper mechanism for eviction cited in Ex. 1) and reminding the recipients that

> the Department of HUD determined a few years ago that the so-called "criminal eviction statute", Section 50-523 of the Arkansas Statutes, was not an acceptable method of evicting tenants from assisted housing and advised all housing authorities…that Section 50-523 was not to be used as a means of evicting their tenants.

Ex. 2 at 1. The letter further specified that "this notice is applicable" to, *inter alia*, "Section 8 Existing Housing," "Section 8 New and Substantial Rehabilitation Housing," and "Rent Supplement." *Id.*

### b. MHA Must Provide Sufficient Administrative Grievance Procedures Upon Terminating Section 8 Benefits.

Federal law requires certain procedural guarantees—at issue in this case—once a housing authority has decided to terminate a Section 8 participant's benefits. These include (1) prompt and adequate written notice of the reason for termination, (2) opportunity for a hearing at which the participant may present evidence and question witnesses, and (3) a prompt, written post-hearing decision regarding termination. 24 C.F.R § 982.555; 42 U.S.C. § 1437d(k). If the participant elects to have a hearing, she may be represented by the counsel of her choosing, conduct discovery and present evidence, and question witnesses. *Id.* The hearing must be conducted by an impartial adjudicator. *Id.*

### 2.      The Termination of Plaintiff's Section 8 Benefits.

As described in greater detail in Plaintiff's Complaint, this litigation arose from a dispute between Plaintiff and Rental Realty, Inc. ("the Landlord")[2] occurring in August, 2014.  Due to a change in Plaintiff's household size, her Section 8 subsidy ballooned from $1.00 a month to over $300.00 a month, with the increase taking effect on July 1, 2014.  Compl. At ¶ 26.  Upon learning of this drastic increase, Plaintiff asked that she be allowed to transfer her Section 8 housing voucher to a smaller unit, thus bringing her rent obligation back to what she could afford.  *Id.*  While MHA agreed to the transfer, it could not take effect until September 1, 2015, meaning that Plaintiff would have to pay increased rent for July and August.  *Id.* at ¶¶ 27-28.  Through a combination of borrowing from friends, family, and her church, as well as by selling personal items such as her laptop computer, Plaintiff was able to come up with her share of the July rent.  *Id.*  Concerned that she could not come up with the August rent, Plaintiff approached the Landlord to discuss a grace period for payment.  *Id.* at ¶ 29.  On August 4, 2014, the Landlord agreed to deduct Plaintiff's August rent ($303) from her $850 security deposit.  *Id.* at 30.  This agreement was memorialized in writing on or about August 4, 2014, in a document titled "Authorization for Mutual Rescission of Section 8 Lease."  *Id.  See also* Exhibit 3.  At the bottom of that document, a handwritten note states, "Rental Realty is releasing Brenda Glover from her current lease.  **Her outstanding balance owed will be paid with her security deposit that she put down.**" (emphasis added).  *Id.*; Ex. 3.

When Plaintiff subsequently inquired when she would receive the remainder of her security deposit, the Landlord informed Plaintiff that she would not receive *any* of her security deposit.  *Id.* at ¶ 31.  Plaintiff disputed the Landlord's grounds for withholding her deposit.  *Id.*

---

[2] Rental Realty conducted business through a property manager, with whom Plaintiff dealt on a day-to-day basis.  In this brief, the term "Landlord" includes the property manager.

After their disagreement reached an impasse, Plaintiff filed a complaint with the Arkansas Attorney General. *Id.* On August 11, 2014, the Landlord received a letter from the Arkansas Attorney General informing the Landlord that Plaintiff had filed a complaint, and on that same day the Landlord served Plaintiff with a 10-day notice to vacate, pursuant to Ark. Code. Ann. § 18-16-101, for back due rent in the amount of $303.00—*the same amount the Landlord, in writing, had committed to accepting from Plaintiff's security deposit*—also providing MHA with a copy of the notice to vacate. *Id.* at ¶ 32; *see also* Ex. 4.[3]

On or about August 12, 2014, Plaintiff received a letter from MHA stating that her Section 8 Housing benefits would be terminated effective August 27, 2014 (the "Notice Letter"). *Id.* at ¶¶ 38-39; *See also* Exhibit 5. The lone explanation for the termination of benefits read, "Ten day Eviction Notice to vacate for back rent owed in the amount of $303 for August." *Id.* No further facts were provided, nor was a statutory basis for the termination cited. Additionally, the Notice Letter failed to intelligibly inform Plaintiff of her right to counsel or to present witnesses at the hearing, stating instead that, "You have the right to have legal counsel and witnesses **from** present [sic] at the hearing." (emphasis original). *Id.*

The Notice Letter further stated that, should Plaintiff wish to appeal this termination, she could request an informal hearing, which would "be scheduled within 14 calendar days from the date of receipt of the completed request form." Plaintiff submitted a form requesting a hearing

---

[3] Rather than acquiesce in the face of the notice to vacate, Plaintiff sought legal assistance and fought the charge. Plaintiff appeared in criminal court on September 2, 2014, and the charges were *nol prossed*. *State v. Brenda A. Glover,* Case No. LRCR-14-5108. On September 3, 2014, the Landlord served Plaintiff with a *second* notice to vacate for failure to pay rent, even though September rent would not become late until September 4. On September 5, 2014, Plaintiff paid her September 2014 rent, but the Landlord mailed back her money order. Plaintiff was *again* served with a criminal citation for failure to vacate and appeared for trial on October 8, 2014. At trial, Plaintiff's counsel made an oral motion to dismiss, which Judge Alice Lightle granted. *State v. Brenda A Glover*, Case No. LRCR-14-5785. The Landlord never obtained a judicial order to evict Plaintiff.

on August 14, 2014.  MHA ultimately scheduled Plaintiff's hearing for September 4, 2014, seven days past MHA's stated deadline.  *Id.* at ¶¶ 39-40.

On September 4, 2014, Plaintiff appeared at her informal hearing, represented by counsel from the Center for Arkansas Legal Services.  *Id.* at ¶ 41.  Also present were three MHA employees:  Hearing Officer Asonja Nuckolls, Administrative Services Director Marshall Nash, and Housing Specialist Cheryl Roberson.  *Id.*  Roberson was the person who made the decision to terminate Plaintiff's benefits; Nash's role was not explained.  *Id.*  The transcript of the informal hearing shows that Nash acted as an advocate for MHA as well as a support beam for Hearing Officer Nuckolls, who admitted that "[t]his is actually my first hearing with an attorney."  *See* Ex. 6 at 3.

As a preliminary matter, Plaintiff's counsel asked Nuckolls to identify which party bore the burden of proving the basis for termination of benefits.  Nuckolls would not answer this question.  Nash stepped in and stated:  "Your argument is so noted but let her go ahead and go through her process and then whatever argument you have, when we get to the end, just make it and it will be on the record."  *Id.*  Nash also implied that it was improper for Plaintiff's counsel to ask about the burden of proof:  "We ain't here to fight.  We're just here to give her an opportunity to be heard.  But we hadn't—we can't get to that if counsel is gonna, you know.  So let's—but you're going to get a chance to—I know you worked on it; can't wait to hear it.  But let's let her go through her process."  *Id.*  No one ever clarified whether "her process" required MHA or Plaintiff to shoulder the burden of proving or disproving a valid basis for termination.

Plaintiff's counsel also asked Nuckolls to clarify the regulatory basis for MHA's termination decision.  Nuckolls replied that she "can't cite the exact regulation."  *Id.* at 2.  However, she said that MHA terminated Plaintiff's benefits because, as indicated by the notice to

vacate, Plaintiff had failed to "pay [her] portion of the rent timely and abide by [her] lease." *Id.* Plaintiff attempted to explain that her rent was not in fact late because she had an agreement with the Landlord.   Plaintiff's counsel further clarified this point in his argument to Nuckolls. Furthermore, Plaintiff's hearing file, which Nuckolls possessed, contained the document entitled "Authorization for Mutual Rescission of Section 8 Lease," in which the Landlord expressly agreed to take Plaintiff's August rent from her security deposit.  *See* Ex. 3.

Despite this evidence that her rent was not, in fact, late, Nuckolls refused to consider it and determined that she could only consider the notice to vacate.  Indeed, the position staked out by both Nuckolls and Nash was that MHA would only rely on "the four corners" of the notice to vacate furnished by the Landlord, and that any contradictory evidence categorically would not be considered.  As Nash informed Plaintiff's counsel, "This person could come in here and say there was no agreement.  She says there is an agreement.  So they just go by the document, sir." Ex. 6 at 20–21.

Plaintiff's counsel also attempted to present mitigating evidence of Plaintiff's theretofore perfect record of paying rent and the hardship that the denial of Section 8 benefits would work upon her.  However, Nuckolls refused to consider this evidence and declared that she had no discretion to consider factors besides the notice to vacate:  "Let me just say this, the rules with regard to her being a model tenant for the years that she's been in the program, that really does not factor.  That does not factor in.  If the, if the family obligations are not followed, we are obligated to follow the HUD regulations and terminate assistance if rent's not paid." *Id.* at 13.

Nuckolls took the position that MHA's receipt of the notice to vacate was a sufficient ground, by itself, to terminate Plaintiff's benefits and stated that MHA's policy is to terminate Section 8 Housing benefits whenever it receives a notice to vacate.  For example, Nuckolls stated

to Roberson, "So, *according to our policy*, once you received the notice you proceeded with what our rules are and proceeded with termination and sending a letter." *Id.* at 6 (emphasis added.)  Roberson affirmed.  *Id.*  At another point, Nuckolls stated, "[W]hat Ms. Roberson received was the paperwork from the owner and that is what we act upon." *Id.* at 13.  Upon questioning from Plaintiff's counsel, Nuckolls further confirmed that MHA's policy is to terminate benefits upon receipt of a notice to vacate from a landlord, without an accompanying judicial order of eviction.  *Id.* at 26-27.

At her hearing, Plaintiff was never provided an opportunity to cross-examine the Landlord upon whose representation the notice to vacate was based.  MHA did not present any evidence to corroborate the representation in the notice to vacate that the rent was due and had not been paid.[4]

Following the September 4 hearing, Plaintiff was told that she would receive written notice of Nuckolls' decision within 10 business days.  Compl. At ¶ 55.  After that deadline passed with no statement from MHA, Plaintiff's counsel contacted MHA on September 24, 2014, to request the status of the hearing decision.  *Id.*  After the request by Plaintiff's counsel, MHA mailed out written notice of Nuckolls' decision on September 25, 2014—six days late and in violation of MHA's own policy.  Ex. 7.  The hearing decision upheld the termination of Plaintiff's Section 8 Housing benefits, stating, "You attempted to pay your August 2014 rent of $303 late however owner refused to accept it.  MHA has no written agreement between you and the owner substantiating there was a mutual agreement to pay your rent late." *Id.*  Contrary to this statement, Plaintiff's hearing file contained a copy of Exhibit 3, in which the Landlord

---

[4] As discussed in footnote 3, no court has ever entered an order finding that Plaintiff's rent was late or that Plaintiff should be evicted.  Indeed, Plaintiff has prevailed in each of the two criminal hearings her Landlord initiated.

agreed to deduct the balance of Plaintiff's rent from her security deposit. Additionally, the hearing decision noted that it was based on the violation of a "Family Obligation under the program as listed in CFR 982.551" and admonished Plaintiff that "[n]ot paying rent in accordance with your lease agreement is a serious violation of your lease." Ex. 7.

### 3.    Discovery Has Revealed That MHA's Conduct is Systemic.

The above facts are not localized to Plaintiff—MHA suffers from an agency-wide inability to consistently and properly follow federal regulations governing the termination of Section 8 benefits or the facilitation of administrative grievance procedures, including termination letters, administrative hearings, and post-hearing notices. Absent a declaration that Defendant's conduct violates federal law and a corresponding injunction requiring Defendant to consistently follow federal law, all Section 8 housing voucher recipients are at risk of losing their benefits as a result of unconstitutional, illegal conduct.

### a.    MHA Terminates Benefits Upon Receipt of Notice to Vacate Letters

Discovery has revealed multiple instances of Defendant identifying the receipt of a 10-day notice to vacate letter as its reason for termination of Section 8 benefits. Exhibit 8, a case file detailing a termination in 2012,[5] is illustrative. The sole infraction identified in the termination letter is "Eviction letter dated July 6, 2012." Ex. 8 at 1. The "eviction letter," however, is nothing more than a 10-day notice to vacate, issued under the ambit of Ark. Code

---

[5] Defendant provided Plaintiff with redacted case file documents, bound together with paper clips in lieu of an index distinguishing individual case files. Accordingly, it is not always clear which documents are part of an individual case file. However, Plaintiff has relied on Defendant's initial grouping, and has further attempted to corroborate the relation of documents by indices such as date or zip code, or other context clues.

Ann. § 18-16-101,[6] and threatening the recipient with "prosecut[ion] under the criminal laws of the State of Arkansas." *Id*. at 4.  Comparable termination letters can be found in 2011,[7] 2013,[8] and 2014.[9]  Plaintiff has identified 37 instances in Defendant's production in which Ark. Code Ann. § 18-16-101 appears to have been used as the eviction mechanism.  *See* Declaration of David Slade (Exhibit 12) and Exhibit A thereto.

MHA's Administrative Plan, which exclusively governs MHA's policies and procedures for termination of Section 8 benefits,[10] does not mention or otherwise recognize HUD's prohibition on the use of Ark. Code  Ann. § 18-16-101.  *See* Exhibits 13, 14, 15, and 16 (the portions of MHA's Administrative Plan governing Section 8 benefit termination and administrative grievance procedures from 2011, 2012, 2013, and 2015, respectively).[11]  Thus, Defendant has failed (and continues to fail) to incorporate a critical HUD directive into its governing manual, with the effect of illegally limiting the rights of Section 8 recipients.

---

[6] The 10 day time period is unique to Ark. Code Ann. § 18-16-101.  Thus, beyond the reference to criminal prosecution, any notice to vacate with a 10 day time period is presumably issued pursuant to the criminal eviction statute.

[7] Exhibit 9 contains an October 28, 2011 termination letter for "eviction," arising from a 10-day notice to vacate that states that the recipient risks being "prosecuted under the criminal law of the State of Arkansas."

[8] Exhibit 10 contains a May 13, 2013 termination letter for "Notice to vacate from landlord," arising from a 10-day notice to vacate that states that the recipient risks being "prosecuted under the criminal law of the State of Arkansas."

[9] Exhibit 11 contains a January 22, 2014 termination letter for "Evicted," arising from a 10-day notice to vacate that states that the recipient risks being "prosecuted under the criminal law (*ARK. STAT. ANN. 18-16-101; FAILURE TO VACATE*), of the State of Arkansas." (emphasis original).

[10] When asked to describe the role of MHA's Administrative Plan, MHA's Executive Director Rodney Forte stated in his deposition that the document "basically is your Bible to tell you what is – you know, how we do what we do."  *See* Exhibit 17, Deposition of Rodney Forte ("Forte Depo."), at 25:4-5.  When asked whether he was aware of any other documents governing MHA's termination of Section 8 benefits, Director Forte stated he was not.  *Id*. at 27:1-5.

[11] MHA did not update its Administrative Plan in 2014.

**b.      MHA's Inconsistent Notice of Termination Letters Omit Federally-Required Information.**

Discovery has yielded multiple instances in which the termination letter sent by MHA not only fails to cite the regulation under which the Section 8 voucher is being terminated, but also fails to provide a factual background for the termination beyond the word "evicted," making it impossible to determine, from the face of the letter, the precise grounds of termination.  Plaintiff has identified 51 letters, produced by Defendant, in which the word "evicted" (or similar wording) is the reason listed for the termination of Section 8 benefits.  *See* Ex. 12, Declaration of David Slade, and Exhibit B thereto.  Additionally, in at least 41 instances, MHA's termination letters fail to include notice of the recipient's right to have counsel that their administrative hearing, as well as the right to present or question witnesses.  *Id*. and Exhibit C thereto.

**c.      MHA Does Not Have a Consistent Training Protocol for Its Hearing Officers.**

In his deposition, Rodney Forte stated that MHA currently relies exclusively on three outside attorneys to conduct informal hearings contesting Section 8 terminations.  Ex. 17 at 94:22-23.  However, when asked whether the attorneys received any HUD-specific training, Director Forte could not point to any.  *Id*. at 91:6-14; 92:9-25, 93:1-3.  Further, Director Forte could not confirm that the attorneys were even provided with MHA's Administrative Plan.  *Id*. at 93:2-3.

Additionally, Director Forte testified to the fact that MHA conducts no audits of its hearings or of its hearing officers' performance.  *Id*. at 109:3-25, 110:1-15.  Indeed, the only oversight Forte could identify was the semi-annual update to MHA's Administrative Plan:

> Q: Okay, So Mr. Forte, if I understand the last few minutes correctly, prior to some point in 2014 or 2015, bringing in the third-party hearing officers, the only role – or the only review that

MHA gave of hearing officers in informal hearings was the annual update to the Administrative Plan; is that correct?

A: From – yeah, unless we had some other times that we did upgrades to the –

Q: Okay.  But it would be through upgrading the Administrative Plan?

A: Right. Uh-huh.

*Id*. at 110:1-15.

## B.    PROCEDURAL POSTURE.

Plaintiff filed the Complaint in the instant litigation on November 3, 2014 (Dkt. No. 1). Concurrently, she filed a Motion for a Preliminary Injunction ("Motion") and accompanying Memorandum of Law in Support, seeking to enjoin Defendant to reinstate her Section 8 benefits (Dkt. Nos. 2-3).  Shortly thereafter, Defendant agreed to reinstate Plaintiff's voucher, at which point Plaintiff sought to withdraw her Motion (Dkt. No. 6), and the Court granted the withdrawal on November 18, 2014 (Dkt. No. 7).  Defendant filed its Answer on March 24, 2015 (Dkt. No. 10) and the parties submitted their Joint Rule 26(f) Report on May 5, 2015 (Dkt. No. 13).  The Court issued a Final Scheduling Order on May 7, 2015, setting, *inter alia*, a date of September 30, 2015 for Plaintiff's Motion for Class Certification (Dkt. No. 14).  The parties engaged in extended settlement talks throughout the Spring, Summer, and Autumn of 2015, and on September 23, 2015, submitted a Stipulation for Order Continuing Deadlines in Light of Proposed Settlement (Dkt. No. 16), which sought a 90-day extension of all deadlines set forth in the Final Scheduling Order.  The Court entered an order granting this extension that same day (Dkt. No. 17).

Since that time, the parties have been unable to arrive at any settlement, and Plaintiff has resumed discovery and filed the instant Motion for Class Certification.

14

III.   **LEGAL ANALYSIS.**

   A.   **APPLICABLE LEGAL STANDARDS.**

Plaintiff seeks certification, pursuant to FRCP 23(a) and (23)(b)(2), of the following

Class:  all persons receiving Section 8 housing vouchers from MHA.  A court's analysis of

whether to certify a class pursuant to Rule 23 of the Federal Rules of Civil Procedure is a two-

step process.  First, a plaintiff must set forth *prima facie* facts that support the four requirements

of Rule 23(a):  (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of

representation.  *Robinson v. Sears, Roebuck & Co.*, 111 F.Supp.2d 1101, 1114 (E.D. Ark. 2000);

*Mehl v. Canadian Pac. Ry., Ltd.*, 227 F.R.D. 505, 509 (D. N.D. 2005).  Upon a finding that the

requirements of Rule 23(a) have been met, a plaintiff must then demonstrate that a class is

maintainable under one or more of the three alternatives set forth in Rule 23(b).  In this case,

Plaintiffs seek certification under Rule 23(b)(2), which requires a demonstration that Defendant

"has acted or refused to act on grounds generally applicable to the class, thereby making

appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a

whole."

In considering a class certification motion, the question before the Court "is not whether

the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather

whether the requirements of Rule 23 are met."  *Robinson*, 111 F.Supp.2d at 1114 (quoting *Eisen*

*v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974)).  However, in rigorously analyzing whether

Plaintiff has satisfied the requirements of Rule 23, the Court "may look past the pleadings…[to]

understand the claims, defenses, relevant facts, and applicable substantive law…."  *Thompson v.*

*Am. Tobacco Co.*, 189 F.R.D. 544, 549 (D. Minn. 1999) (quotation omitted).  Indeed, the class

certification "determination generally involves considerations that are enmeshed in the factual

and legal issues comprising the plaintiff's cause of action." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1429 (2013).  Because of the fact-specific quality of the analysis, the Court exercises broad discretion in determining whether to certify a particular class under Rule 23.  *Reiter v. Sonotone Corp.*, 442 U.S. 330, 345 (1979).

### B.     THE CLASS SATISFIES THE REQUIREMENTS OF RULE 23(a).

#### 1.     The Class Is Too Numerous For Joinder of Claims to be Practicable.

For a class action to be appropriate, the proposed class must be so numerous that joinder of all of its individual members would be impracticable.  Fed. R. Civ. P. 23(a)(1).  As a general "rule of thumb," a showing of 40 or more potential class members warrants a finding of the requisite numerosity.  *Baer v. G&T Trucking Co*., No. Civ. 03-3460 (PAM/JSM), 2005 WL 563107, *4 n. 2 (D. Minn. Mar. 1, 2005).  Moreover, the Eighth Circuit has recognized that "a class of as low as 20 members" satisfies this requirement.  *Robinson*, 111 F. Supp. 2d at 1120 (citing *Arkansas Educ. Ass 'n v. Bd. Of Educ., Portland, Ark. Sch. Dist*., 446 F.2d 763 (8th Cir. 1971)).

In addition to the number of persons in the proposed class, the Court may also consider the nature of the action, the size of individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all the putative class members. *Mehl*, 227 F.R.D. at 510; *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 560 (8th Cir. 1982); *Robinson*, 111 F.Supp.2d at 1120.  Moreover, this requirement does not necessitate that joinder be impossible, but simply that joining all members of the class would be difficult.  *Elizabeth M v. Ross*, No. 8:02CV585, 2005 U.S. Dist. LEXIS 45107, *6 (D. Neb. May 11, 2005) (citing *Caroline C. v. Johnson*, 174 F.R.D. 452, 462 (D. Neb. 1996).

Under these standards, the numerosity requirement is easily satisfied here. According to Director Forte, there are between 1,800 and 1,900 Section 8 vouchers currently administered by MHA. Ex. 17 at 18:2-21.[12] Thus, there are well over one thousand members in the Class.

A finding of numerosity is also warranted based on the alternative criteria the Court may consider. In a case involving virtually identical facts—in which Section 8 voucher recipients sought to enjoin a housing authority based on claims of improper termination practices, faulty administrative hearings, and impermissible violations of the agency's own stated policies—the court noted that

> Apart from sheer numbers, other factors support the finding that joinder of all affected parties would be impracticable. Plaintiffs lack the financial resources to afford even suitable housing (hence their enrollment in the Program in the first place), and, therefore, it would be impracticable if not financially impossible for them to bring individual actions to enforce their rights. Moreover, judicial economy favors a single adjudication as to the legality of Defendants' practices or policies over a multiplicity of suits seeking answers to the same legal questions.

*Thompson v. Altoona Hous. Auth.*, 2012 U.S. Dist. LEXIS 108975, at *11 (W.D. Pa. Aug. 2, 2012). Accordingly, Plaintiff satisfies the numerosity requirement of Rule 23(a).

> **2.      The Class Members' Claims Involve Common Questions of Law and Fact.**

Under Rule 23(a)(2) there must be "questions of law or fact common to the [proposed] class." When determining whether commonality has been demonstrated, the Court's "inquiry should be limited to determining whether, if the plaintiffs' 'general allegations are true, common

---

[12] This also demonstrates that the Class is ascertainable. Because each member is a Section 8 voucher recipient, Defendant possesses an up-to-date record of the name and address of each putative Class member. *Eastwood v. Southern Farm Bureau Cas. Ins.* Co., 2013 U.S. Dist. LEXIS 78929, at *10 (W.D. Ark. June 5, 2013) ("The requirement of ascertainability simply means that the description of a proposed class must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.") (citation, quotation omitted).

evidence could suffice to make out a *prima facie* case for the class.'"  *In re Zurn Pex Plumbing Prods. Liab. Litig*., 644 F.3d 604, 618 (8th Cir. 2011) (quoting *Blades v. Monsanto Co*., 400 F.3d 563, 566 (8th Cir. 2005)).  A common question is one whose determination "will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores v. Dukes, Inc*., 131 S. Ct. 2541, 2551 (2011).  In this regard, commonality is readily demonstrated where a common course of wrongful conduct affecting the class is alleged.  *See Coley v. Clinton*, 635 F.2d 1364, 1378 (8th Cir. 1980); *Beckmann v. CBS, Inc.,* 192 F.R.D. 608, 613-14 (D. Minn. 2000).

Here, Plaintiff alleges that MHA engages in several common practices, in violation of federal law:  (1) improperly terminating Section 8 benefits upon receipt of a 10-day notice to vacate; (2) sending notice letters that fail to adequately provide notice of the reason for termination, the statutory or regulatory support for such termination, or the right of the recipient to have counsel, present and question witnesses, and present evidence at informal hearings; (3) shifting the burden of proof at informal hearings by requiring participants to disprove the allegations against them; and (4) conducting informal hearings with partial, non-neutral decision makers who have not received adequate training.

Resolution of whether these practices violate federal law will be determined through common proof, including, *inter alia,* the contents of Defendant's Administrative Plan, Defendant's course of conduct in following or failing to follow the applicable HUD regulations, and Defendant's course of conduct in terminating Section 8 housing voucher benefits and conducting informal hearings.  Faced with nearly identical circumstances, the *Thompson* court found that "the central factual and legal questions are common to the Plaintiffs and the prospective class members.  To wit, the Court must ultimately determine:  (1) what termination

practices Defendants engaged in and the specifics of those practices; and (2) whether such practices are permissible under federal law. Plaintiffs, therefore, have demonstrated commonality under Rule 23(a)(2)." 2012 U.S. Dist. LEXIS 108975, at *12-13.  Therefore, like the plaintiffs in *Thompson*, Plaintiff has established commonality.

### 3.    Plaintiff's Claims Are Typical of Those of the Class.

Under Rule 23(a)(3) the claims of the representative parties must be "typical of the claims . . . of the class."  This factor is "fairly easily met so long as other class members have claims similar to the named plaintiff."  *Robinson*, 111 F.Supp.2d at 1123, citing *Alpern v. UtiliCorp United, Inc*., 84 F.3d 1525, 1540 (8th Cir. 1996); *see also Wakefield v. Monsanto Co*., 120 F.R.D. 112, 116 (E.D. Mo. 1988).  Moreover, a class representative's claim need only be typical and not identical.  *Webb v. Missouri P.R.R*., 95 F.R.D. 357, 363 (E.D. Ark. 1982).  As the court stated in *Alpern*, "[f]actual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory."  *Alpern*, 84 F.3d at 1540 (*citing Donaldson v. Pillsbury Co*., 554 F.2d 825, 831 (8th Cir. 1977)).

Here, as demonstrated above in the Statement of Facts, Plaintiff meets all of the objective criteria in the definition of the Proposed Class.  Plaintiff's and the Class's claims involve the same common question of fact – namely whether MHA's policies governing (1) termination of Section 8 vouchers and (2) informal hearings challenging such terminations are permissible under federal law.  The claims are all based on the same legal theories.  Thus, Plaintiff's claims are typical of the claims of the Class for multiple reasons:

> First, these claims stem from the practices allegedly employed by Defendants to terminate Program benefits on a class-wide basis. Second, the named Plaintiffs and absentee class members seek relief under the same legal theory—that Defendants' practices

> violate due process.   Additionally, the incentives of the named
> Plaintiffs are aligned with those of the class:   all members seek
> protection from the same potentially rights-violating termination
> practices.   The Court, therefore, finds that Plaintiffs have
> established the typicality requirement.

*See Thompson,* 2012 U.S. Dist. LEXIS 108975 at *13-14.

### 4.   Representative Plaintiff and Her Chosen Counsel Will Fairly and Adequately Protect the Interests of the Class.

The fourth factor under Rule 23(a) requires a showing that the proposed class representative will fairly and adequately protect the interest of the class.   "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent," and requires that the class representative "possess the same interest and [have suffered] the same injury as the class members."   *Robinson,* 111 F.Supp.2d at 1124 (citing *Amchem Prods. v. Windsor,* 521 U.S. 591, 625 (U.S. 1997)).   This inquiry also "factors in competency and conflicts of class counsel."   *Id.* (citations omitted).

In *Amchem,* the Supreme Court observed that "[t]he adequacy-of-representation requirement 'tend[s] to merge' with the commonality and typicality criteria of Rule 23(a), which serve as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."   521 U.S. at 626 n. 20 (quoting *Gen. Tel. Co. of the Southwest v.Falcon,* 457 U.S. 147, 157 (U.S. 1982)).

In this case, because the claims of the proposed Class Representative are identical to the claims of each member of the Proposed Class, the requisite "common interest" is present to satisfy the first requirement.   In particular, Plaintiff has actively participated in the prosecution of

her claim,[13] and is ready and able to address any and all issues affecting members of the Proposed Class. Plaintiff's claims are premised on Defendant's unlawful conduct related to its termination policies and administrative grievance procedures. The Class allegations against Defendant are identical to Plaintiff's claim in that each Class member is equally subject to the risk of terminated benefits under such impermissible policies and practices. Accordingly, Plaintiff is a member of the Class she seeks to represent, and there is no indication of conflict or antagonism between Plaintiff and the members of the Proposed Class. Accordingly, the first prong of the adequacy inquiry is satisfied.

As to the second prong regarding adequacy of counsel, Plaintiff has retained counsel with significant expertise in complex civil litigation, as well as civil rights litigation. *See* Ex. 18, Declaration of Hank Bates. Carney Bates & Pulliam, PLLC ("Carney Bates & Pulliam" or "Plaintiff's Counsel") is well-capitalized, which allows the firm to dedicate considerable resources to the fullest extent necessary to achieve the best possible result for Class members. *Id.* To date, Plaintiff's Counsel has, among other things, diligently investigated the claims against Defendant, engaged in intense fact discovery, and diligently engaged in extensive (albeit unsuccessful) settlement negotiations with Defendant. Plaintiff's Counsel has thus demonstrated that it will adequately protect the interest of the Class. Accordingly, the second prong of the adequacy inquiry is satisfied. *Nelson v. Wal-Mart Stores, Inc.*, 245 F.R.D. 358, 371 (E.D. Ark. 2007) (finding Plaintiff's Counsel "qualified and competent to prosecute this class action."); *Thompson,* 2012 U.S. Dist. LEXIS 108975, 14-15 (adequacy requirement met where plaintiffs' counsel were experienced class action litigators).

---

[13] In point of fact, beyond filing the instant litigation, Plaintiff has sought to vindicate her rights by (1) demanding an informal hearing from MHA; (2) submitting two demand letters to MHA challenging the outcome of that hearing; (3) and successfully defending herself in two, separate criminal proceedings arising from being served with 10-day notices to vacate.

### C.   THE CLASS SATISFIES THE REQUIREMENTS OF RULE 23(b).

#### 1.   Defendant Has Acted or Refused to Act on Grounds That Apply Generally to the Class, So That Final Injunctive Relief and Corresponding Declaratory Relief is Appropriate Respecting the Class as a Whole.

Under FRCP 23(b)(2), a class action may be maintained if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."   The Eighth Circuit has observed that "[i]f the Rule 23(a) prerequisites have been met and injunctive or declaratory relief has been requested, the action usually should be allowed to proceed under subdivision (b)(2)."   *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1175 (8th Cir. 1995) (quoting 7A Charles A. Wright et al., Federal Practice and Procedure § 1775, at 470 (1986)); *see also Doran v. Mo. Dep't of Soc. Servs.*, 251 F.R.D. 401, 406-407 (W.D. Mo. 2008) (citing *DeBoer* and certifying a class pursuant to 23(b)(2) where Rule 23(a)'s requirements were satisfied); *Owner-Operator Indep. Drivers Ass'n v. Supervalu, Inc*., 2008 U.S. Dist. LEXIS 20420 at *10-11 (D. Minn. Mar. 14, 2008) (same); *Caroline C. v. Johnson*, 174 F.R.D. 452, 467 (D. Neb. 1996) ("Rule 23(b)(2) 'is almost automatically satisfied in actions primarily seeking injunctive relief.'") (quoting *Neal v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994)).

The Supreme Court further clarifies that

> [t]he key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted – the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.  In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class.

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2557 (U.S. 2011) (citation, quotation omitted).

Here, Plaintiff's requested injunctive and declaratory relief readily satisfies this test.  Plaintiff

seeks to enjoin Defendant from improperly terminating Section 8 benefits arising from 10-day

notices served pursuant to Ark. Code § 18-16-101 (and without a judicial order of eviction),

which relief would affect each Class member identically; the same can be said for Plaintiff's

requested relief enjoining Defendant to send HUD-regulation-compliant termination letters

detailing the factual grounds and statutory authority for termination of benefits, provide impartial

hearing officers, consider all evidence presented at the hearing, assume the burden of proof (by a

preponderance of the evidence) in informal hearings, and provide adequate and timely post-

hearing letters affirming or overturning the terminations at issue.  As the *Thompson* court stated:

> Quite simply, the alleged practices are either unlawful with respect
> to all class members or none of them.  Thus, this is an appropriate
> Rule 23(b)(2) class type because the declaratory and injunctive
> relief sought is indivisible in nature.  *See Wal-Mart*, 131 S. Ct. at
> 2557.  Whether or not these alleged practices actually do violate
> federal law is a question for a later stage in this litigation, but for
> now, the Court finds that Plaintiffs have satisfied Rule 23(b)(2).

2012 U.S. Dist. LEXIS 108975 at *17.  Here, the analysis is identical, and accordingly, the

Proposed Class should be certified pursuant to FRCP 23(b)(2).

## IV.   CONCLUSION.

Plaintiff asks to certify the following Class, pursuant to FRCP 23(a) and 23(b)(2):  all

persons receiving Section 8 housing vouchers from MHA.  Plaintiff seeks consideration of the

following common issues, with regard to whether they violate federal law:  (1) termination of

Section 8 housing voucher benefits when a voucher recipient has received a 10-day notice to

vacate from a landlord, pursuant to Ark. Code Ann. § 18-16-101, without an accompanying

judicial order of eviction; (2) sending termination notice letters that fail to adequately provide

notice of the reason for termination, the statutory or regulatory support for such termination, or

the right of the recipient to have counsel, present and question witnesses, and present evidence at

informal hearings; (3) shifting the burden of proof at informal hearings, thereby requiring participants to disprove the allegations against them; and (4) conducting informal hearings with partial, non-neutral decision makers who have not received adequate training.  Proof of this unlawful conduct will be established on a common, class-wide basis, as Defendant's conduct threatens Plaintiff and Class members in an identical way (making the declaratory and injunctive relief sought consistent among all Class members).  Plaintiff has been harmed in a manner consistent with all other Class members, and will continue to adequately advance the interests of the Class in this litigation.  Additionally, the Class is sufficiently numerous and ascertainable to warrant certification.

Based on the foregoing, Plaintiff respectfully requests this Court grant the instant motion and 1) certify the Proposed Class; 2) appoint Plaintiff as Representative Plaintiff for the Class; and 3) appoint Plaintiff's chosen counsel as counsel for the Class.

Dated: December 23, 2015                          Respectfully submitted,

David Slade (ABN 2013143)
Hank Bates (ABN 98063)
CARNEY BATES & PULLIAM, PLLC
2800 Cantrell Rd., Suite 510
Little Rock, AR 72202
Tel: (501) 312-8500
dslade@cbplaw.com
hbates@cbplaw.com

By: /s/ David Slade_____

*Counsel for Plaintiff and the*
*Proposed Class*

## CERTIFICATE OF SERVICE

I, David Slade, hereby certify that on December 23, 2015, I caused a copy of the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send electronic notification to the parties and registered attorneys of record that the document has been filed and is available for viewing and downloading.

/s/ David Slade_____